GRACEY, JUDGE:
On Friday morning, June 26, 1981, the claimant and his wife were travelling northerly on 1-79 at a speed of about 55 miles per hour, passing other cars, when the claimant alleges his car ran over an exposed steel rail in the roadway, being the southerly approach end of a bridge at or near Mile Post 61, in Braxton County near the Sutton Exit, causing his car to go into the air and fall back to the highway. At the next bridge, roughly a quarter mile northerly, he alleges that the car dropped from the exit end of the bridge. As a result, claimant alleges damages to his automobile, a 1974 Dodge Dart, in the amount of $187.11. Claimant also alleges that he sustained neck and back injuries resulting in medical expenses of $970.88. He seeks an additional $45,000.00 for pain and suffering.
Claimant testified that as he drove up 1-79, he came upon a section of road where “it was apparent that it was a construction site.” At the site, the surface of the pavement had been planed in order to resurface the approach. Claimant said that he saw no machinery and no warning signs or flagmen at the site. Claimant estimated that there was about a five-inch difference in elevation between where the pavement had been planed and the surface of the bridge. He said that he entered the bridge at a speed of 50 to 55 miles per hour. Claimant continued to drive until he reached a rest area, approximately 20 miles beyond the bridges, before stopping. While there, he met one of respondent’s employees, to whom he complained about the bridges.
Following the incident, claimant testified that he had pain in his neck, back, and legs. He first sought medical attention on July 9, 1981, and has undergone physical therapy as an outpatient on a number of occasions. His testimony revealed that he had a leg injury during World War II, and was medically retired from his employment as a fire fighter in 1964 as a result of back injuries. He had further injured his back in an automobile accident in 1967, and had worn a back brace since 1963. Claimant added that the pains he has had since the incident in question were different than any he had had before.
Marvin Murphy, respondent’s District Maintenance Engineer at the time of the incident, testified that the records for this job indicated *287 that approximately 2.4 inches of road surface had been planed from the approach of the bridge. He indicated that work was begun on June 22, 1981, at which time signs had been placed at the scene.
Richard Paul Thoms, Traffic Service Supervisor, testified that signs were placed at Mile Post 61 on June 22. He testified that “Road Work Ahead” signs would be placed one mile and one-half mile ahead of the bridge, and also at the 1500-foot mark. While work was in progress, “Keep Left” or “Keep Right” signs would be used, and a “Bump” sign would be in place just at the site of the work. No work was performed at the scene on June 26, but Mr. Thoms stated that the signs would remain until all work was completed.
Robert Michael SanJulian, respondent’s Safety Officer, travelled on 1-79 past the site at approximately 5:00 p.m. on June 26, 1981. He testified that at that time, there were three signs indicating work ahead at one mile and one-half mile, and a bump sign with a speed limit of 25 miles per hour.
In view of the evidence presented, the Court is of the opinion that claimant has not established, by a preponderance of the evidence, any negligence on the part of respondent in the maintenance of this construction site. Rather, the evidence indicates that claimant’s own negligence, in failing to observe warning signs and in driving through the construction area at an excessive speed, was the proximate cause of the damages incurred. The Court can only conclude that if the warning signs were present at 5:00 p.m. on the day in question, and respondent’s employees were not working on that day, the signs must have been present that morning. Therefore, the Court is of the opinion to, and does, disallow the claim.
Claim disallowed.